ATWILL, (FERRETT v.) See Case No. 4,-747.

═══════

# Case No. 640.

## ATWILL v. FERRETT et al.

[2 Blatchf. 39.][1]

Circuit Court, S. D. New York. Dec. 2. 1846.

EQUITY PLEADING— SPECIAL DEMURRER — MULTIFARIOUSNESS—DISCOVERY—COPYRIGHT—AUTHORSHIP — ACT FEB. 3, 1831 — COMPILATION — INFRINGEMENT—REMEDIES — ACTION ON THE CASE —DAMAGES.

1. A special demurrer to a bill in equity is insufficient unless it points out specifically, by paragraph. page, or folio, or other method of reference, the parts of the bill to which it is intended to apply.

[Cited in Chicago, St. L. & N. O. R. Co. v. Macomb. 2 Fed. 20.]

2. Where an action at law for the infringement of a copyright was brought against G., and then the plaintiff filed a bill in equity against G., F. and A., charging them, as copartners, with having committed the acts for which G. was sued at law, and seeking a discovery from all of them in aid of the suit at law; Held, that G. could not, by demurrer, object to the bill as multifarious in respect to his co-defendants, especially as it appeared by the bill that they resided out of the jurisdiction of the court.

3. It seems, too, that the charge in the bill that the defendants committed the acts complained of as copartners, would be an answer to the objection of multifariousness, provided

───────

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

the bill contained other proper allegations connecting them with the object and purpose of the discovery prayed.

4. A defendant cannot be compelled to make discoveries in answer to a bill which seeks to enforce penalties and forfeitures against him by means of such discoveries.

5. Where a bill in equity claimed a forfeiture of pieces of music under section 7 of the act of February 3, 1831, (4 Stat. 438,) and also sought a discovery from the defendants of the number of pieces printed by or for them. and of the number on hand: Held, that the bill was bad, on special demurrer.

6. If the forfeiture had been waived in the bill, the discovery might be compelled in aid of the recovery of damages in a suit at law.

7. And it seems that, on such discovery, equity might compel the defendants to deliver up to the plaintiff the forfeited copies.

8. But the defendants cannot be directly required to convict themselves of the act which carries with it the forfeiture.

9. The objections which may be taken by general demurrer to a bill founded on a copyright, and seeking a discovery in regard to its infringement, in aid of a suit at law, are: (1.) That the plaintiff sets forth no title in himself to the subject matter of the copy-right; and (2.) That the bill lays no legal foundation for the discovery sought.

[Cited in Lawrence v. Dana, Case No. 8,136.]

10. To constitute a person an author under the copy-right act of February 3, 1831, (4 Stat. 436,) he must, by his own intellectual labor applied to the materials of his composition. produce an arrangement or compilation new in itself.

11. He may arrange or compile a new production from materials before known, or obtained for him by the labors of others, but he cannot obtain a copy-right for those materials in the same state in which they are furnished to him.

[Cited in Schuberth v. Shaw, Case No. 12,-482.]

[See Pierpont v. Fowle, Case No. 11,152. Compare Reed v. Carusi, Id. 11,642.]

12. A person cannot appropriate as his own, by copy-right, alterations and improvements made in a musical composition by others at his procurement and for him.

13. Where a bill in equity contains allegations which constitute an assertion of authorship under the copy-right act in terms sufficiently explicit to constitute a perfect title at law in the plaintiff, the bill will be held good on general demurrer, notwithstanding the defectiveness and inconsistency of other allegations in the bill as to the authorship.

14. An action on the case is the proper form of remedy to recover damages for the violation of a copy-right, and trespass will not lie for such violation.

15. To obtain a discovery in equity in aid of a suit at law, the bill must show it to be necessary for the plaintiff. and that, when made, it can be used to his advantage.

16. Such a discovery will not be granted where it is sought in aid of an action of trespass for the violation of a copy-right.

17. And a bill seeking such discovery will be held bad. on general demurrer.

18. It seems, too, that such a bill is defective in substance, where it seeks a discovery from three defendants, and the action at law is against only one of them.

19. Where a bill in equity against three defendants showed title in the plaintiff to a copyright, and a wrongful violation of it by all the

defendants, and injuries inflicted and apprehended from such violation, and prayed for an injunction against all the defendants, and also for a discovery from all in aid of a suit at law against one for the same violation: *Held*, on general demurrer to the whole bill, that the relief by injunction was not dependent on the discovery prayed, and that, although the bill was bad as a bill of discovery, yet it was good as an injunction bill, and that the demurrer must be overruled.

20. A general demurrer to the whole bill must be overruled if any independent part of the bill is sufficient.

21. Nor will a formal protestation accompanying the demurrer avoid the force of the rule.

In equity. The bill in this case was filed by the plaintiff [Joseph F. Atwill] against Edmund Ferrett, Timothy S. Arthur and Elijah B. Galusha, copartners in Philadelphia and New York, under the name of Ferrett & Co. It set forth that, in December, 1844, an opera was produced at the Park Theatre in New York, for the first time in America, entitled "The Bohemian Girl," the music of which was composed by one Balfe, in Europe; that, soon afterwards, the plaintiff undertook to adapt, arrange and publish such music, and, in doing so, gave to particular pieces of the music titles differing from those they bore as composed and represented in Europe and in New York, and made many alterations of and additions to said music, and arranged trios as duetts, and duetts as solos, and gave names to nameless waltzes and gallops; that six pieces of music in the opera, whose titles were given, were expressly adapted and arranged for or by the plaintiff for publication; that the whole of the music of the opera, as written and published in Europe and performed in New York, was adapted, arranged and published by or for the plaintiff, and, as adapted by him, was essentially different from the music as arranged and published in Europe and performed in New York; that, prior to the publication by him of the several pieces of music of the opera so arranged and adapted by or for him, and with such additional matter, new titles, and new names, the plaintiff caused a printed copy thereof to be deposited in the clerk's office of the district court for the southern district of New York, in which district he then resided, and obtained from said clerk's office a copy of the record of said titles, and caused a copy of such record to be inserted at full length upon the title-page or frontispiece of each of the copies of each of the editions of each piece of music, by causing to be printed, in a conspicuous place, on each piece, the following words: "Entered according to act of congress, A. D. 1845, by J. F. Atwill, in the clerk's office of the Dist. court of the southern Dist. of New York;" that within three months after the publication of the same, a copy thereof was delivered to the secretary of state of the United States, to be preserved according to law; and that thus the plaintiff secured a copy-right for the said piece of music, and for the titles of the same. The bill then averred that the defendants had, without permission, sold at New York, to a considerable extent, copies of the several pieces of music so copy-righted, printed from and in exact imitation of the music as arranged and published by the plaintiff, and with the plaintiff's original matter introduced therein, and with his titles to some of them, and in violation of his copy-right; that the defendants had on hand a large quantity of said infringing pieces of music; that the plaintiff had sustained damages to the amount of fifteen thousand dollars; that, in July, 1845, the plaintiff brought a suit at law in this court against the defendant Galusha, (the only one of the partners residing in New York,) in a plea of trespass to recover damages for the said infringement, in which said Galusha was held to bail in $5,000; that said suit was still pending, and the plaintiff intended to bring the same to trial, and expected to recover heavy damages therein; and that a discovery from Galusha and his partners was necessary in order to enable the plaintiff safely to try said cause. The bill then called on the defendants to answer the specific allegations contained in it, and also to discover how many of the infringing pieces of music they had sold. and how many they had on hand, and to set forth an account of their sales, with the rate at which each piece had been sold, and of the number of copies printed by or for them. The prayer of the bill was, that all the infringing copies in the possession of the defendants, and the plates from which they were printed, might be delivered to the plaintiff; that the discovery prayed for, when made, might be used by the plaintiff as evidence on the trial of the action at law; and that the defendants might be enjoined from further infringements. The defendant Galusha demurred to the bill on the grounds set forth in the opinion of the court.

Marshall S. Bidwell, for plaintiff.

Randolph W. Townsend, for Galusha.

Before NELSON, Circuit Justice, and BETTS, District Judge.

BETTS, District Judge. Three separate demurrers are filed to the bill in this case by the defendant Galusha. The other two defendants have not entered their appearance. and it does not appear that they have been served with the subpoena. The defendant attempts to call in question distinct parts of the bill by severing his demurrers, and also takes objection to the whole by general demurrer. The special causes of demurrer are excepted to by the plaintiff as informal and insufficient, in not pointing out precisely the parts of the bill intended to be embraced by them. They adopt the general formulary, "that, as to so much of the bill as seeks," &c., without specifying, by paragraph, page, or folio, or other method of reference, where the objectionable matter is to be found. We think this mode of demurring to the state-

ments of a long and involved bill is too obscure and indefinite to be admissible. Mitf. Pl. 214; Robinson v. Thompson, 2 Ves. & B. 118; Wetherhead v. Blackburn, Id. 121. The business of a special demurrer is to point out, by the clearest indications, the features alleged to be defective in the pleading, and to relieve the court from the labor and delay incurred by repeated searches for the parts to which the demurrer may apply. Story, Eq. Pl. §§ 457-459; Devonsher v. Newenham, 2 Schoales & L. 199. In the present case, the court have abridged the bill paragraph by paragraph, and in that way have been enabled to select various statements which were undoubtedly intended to be embraced by the special demurrers; but we are not inclined to sanction so loose a mode of pleading. We, therefore, hold the special demurrers to be informal and insufficient, except in respect to the multifariousness of the bill, and to its demand of discoveries involving penalties and forfeitures against the defendant. In those particulars we think that the causes of demurrer assigned designate, with sufficient explicitness, the parts of the bill to which they are intended to apply:

(1.) The bill is objected to as multifarious by the defendant Galusha, on the ground that it makes charges against and exacts answers from his co-defendants in regard to matters involved in the suit at law commenced against him, which do not concern them, they not being parties to the suit at law. But the matters referred to concern him, and he cannot make the objection of irrelevancy in respect to his co-defendants, more especially as it appears, on the face of the bill, that they reside out of the jurisdiction of the court. Story, Eq. Pl. § 544, note 3. Another feature of the bill might also probably rescue it from this objection, inasmuch as it charges the acts complained of to have been committed by the three defendants as partners and in their copartnership character, provided they are all connected by other proper allegations with the object and purpose of the discovery prayed for. Mitf. Pl. 181, 183. The demurrer for multifariousness is overruled.

(2.) It is an incontrovertible principle of equity law, that a defendant cannot be compelled to make discoveries in answer to a bill which seeks to enforce penalties and forfeitures against him by means of such discoveries. Story, Eq. Pl. § 521, note 3; Id. §§ 522, 575, 598; Mitf. Pl. 194-197. In this case, the bill claims a forfeiture, under section 7 of the act of February 3, 1831, (4 Stat. 438,) of the plates and pieces of music on hand. Had the forfeiture been waived by the plaintiff, the defendants might be compelled to disclose the number of their publications, the quantity on hand, and the amount realized from sales, in aid of the recovery of damages in a suit at law. So, probably, on such discovery, equity might compel the de-

fendants to deliver up to the plaintiffs the forfeited copies. But the bill is clearly faulty in directly requiring the defendants to convict themselves of the act which carries with it the forfeiture sued for.

The decision of these two points leaves untouched, however, the principal features of the bill which are supposed to be brought in question by the demurrers, and to the discussion of which the argument was mainly directed; and it, therefore, remains to be considered whether advantage can be taken of those matters by general demurrer.

The objections which may be taken on general demurrer are: 1. That the plaintiff sets forth no title in himself to the subject-matter of his alleged copyright; and 2. That the bill lays no legal foundation for the discovery sought.

1. The insufficiency of the plaintiff's title on the face of the bill is claimed to be this—that he alleges the musical composition, or considerable portions of it, to have been arranged, adapted, printed, and published by or for him, instead of averring that it was composed by himself. The plaintiff, on the other hand, contends, that even admitting this to be so, his title is complete, upon the legal adage, qui facit per alium facit per se, and that he can appropriate as his own the alterations and improvements of the music made by others at his procurement and for him.

The act of congress, (4 Stat. 436, § 1,) secures by copyright to any person who is the author of any musical composition the exclusive property in his composition for a term of years. The statute contains a more detailed description of the subjects of copyright than is given in the English acts of 8 Anne and 54 Geo. III., (Gods. Pat. Append. 384, 422;) but the construction given to those acts by the English courts makes them include, under the name of books, pieces of music, &c. So that our system has no broader operation in this respect than the English, and, no doubt, a just construction of both statutes will render their provisions concurrent. The counsel for the plaintiff insists that the doctrine of the English law enables a man to secure to himself as his own composition whatever he has had prepared for him by the labors of others. We think, however, that the cases of Tonson v. Walker, 3 Swanst. 672, 680; Nicol v. Stockdale, Id. 687; Cary v. Longman, 3 Esp. 273, 274; and Mawman v. Tegg, 2 Russ. 385,—rest upon wholly different principles. They recognize the right of authorship, although the materials of the composition were procured by another, and also an equitable title in one person to the labors of another, when the relations of the parties are such that the former is entitled to an assignment of the production. But, to constitute one an author, he must, by his own intellectual labor applied to the materials of his composition, produce an arrangement or compila-

tion new in itself. Gray v. Russell, [Case No. 5,728.] And the rules of the common law and of equity are the same upon this subject. Cary v. Longman, 1 East, 358; Sayre v. Moore, Id. 361, note; Jeremy, Eq. Jur. 322. The title to road-books, maps, &c., rests upon this principle, (2 Story, Eq. Jur. § 940;) and the cases cited by the plaintiff's counsel have relation to new productions arranged or compiled from materials before known, or obtained by others for the author, and not to the appropriation by copy-right of those materials in the same state in which they are furnished.

If, therefore, the plaintiff's title rested only upon the allegation referred to, we should hold the bill to be defective on general demurrer. But we find repeated averments in the bill, to the effect that "he made many alterations of and additions to the said music"—that "he added new matters of his own, not in the original opera"—that he affixed a copy of the record on the title-page "of each piece of music composed, arranged and adapted by him for publication"—and that a copyright was taken out for such pieces "as arranged, adapted, and published by the plaintiff, with the new titles and original matter introduced therein by him," whereby he became entitled to vend the music "as arranged and adapted by him, and to the original matter introduced by him therein;" and the bill charges the defendants with having sold such music "printed from and in exact imitation of the music so arranged and adapted and published by the plaintiff, with the original matter introduced therein by him, and with his titles to some of such pieces of music." These allegations amount to an assertion of authorship in terms sufficiently explicit and full to constitute a perfect title at law, and, the facts being admitted by the demurrer, we must hold the right of the plaintiff established upon these averments, notwithstanding their defectiveness and their inconsistency with others contained in the bill. Mitf. Pl. 212. Such imperfect pleading is matter of form, and can be taken advantage of only by special demurrer. The general demurrer in this behalf must, therefore, be overruled. Verplank v. Caines, 1 Johns. Ch. 57; Higinbotham v. Burnet, 5 Johns. Ch. 184; Kuypers v. Reformed Dutch Church, 6 Paige, 570.

2. The discovery prayed for is to aid the plaintiff in his suit at law prosecuted against the defendant Galusha; and the averment in the bill is, that he has commenced an action of trespass against that defendant for the violation of his copyright. The demurrer raises the question whether the bill alleges such a suit at law as will afford foundation for the discovery sought, no relief consequent on the discovery being prayed for. It is clear that the plaintiff has adopted a form of action at law which cannot be supported.

The English statute of 54 Geo. III. § 2, gives specifically an action on the case as the remedy for the violation of a copyright. Our act (4 Stat. 438) only indicates the form of action when a manuscript is published without the consent of the author, (section 9,) or when a suit is brought to recover the pecuniary penalty given by the sixth section. On general principles of law, however, it is clear that trespass cannot be brought for an injury merely consequential in its character, unaccompanied by force as against the person or property, or by wrongful intermeddling with the possession of property. 1 Chit. Pl. 126, 127. The act of 8 Anne, c. 19, did not designate the form of action, yet no doubt was ever expressed that case was the appropriate one. Beckford v. Hood, 7 Term R. 620; Cary v. Longman, 1 East, 358; Roworth v. Wilkes, 1 Camp. 94. To obtain a discovery in aid of a suit at law, the bill must show it to be necessary for the plaintiff, and that, when made, it can be used to his advantage. Jeremy, Eq. Jur. 161; Story, Eq. Pl. §§ 319, 321. It necessarily follows, from these principles, that a discovery will not be decreed in aid of an action at law, where it is manifest that the plaintiff cannot avail himself of it in the suit he is attempting to prosecute. It is, perhaps, also to be regarded as a substantive defect in the bill that it seeks a discovery from three defendants to aid a suit instituted against one alone. In so far, then, as the maintenance of the bill depends upon the plaintiff's right to a discovery, we think it defective in substance, and bad on general demurrer.

The bill, however, prays for an injunction, and, making title on its face in the plaintiff to the copy-right set forth, and showing a wrongful and wilful violation of the copyright by the defendants, and serious injuries inflicted by and apprehended from such violation, it is sufficient in substance and form to entitle the plaintiff to an injunction. This relief is not dependent upon the discovery prayed, but rests on the equities set forth in the bill, and may be refused or granted, irrespective of the discovery. A general demurrer to the whole bill takes exception, therefore, to this branch of it, and the principle of equity pleading is universal, that a general demurrer to the whole bill must be overruled if any independent part of the bill is sufficient. Higinbotham v. Burnet, 5 Johns. Ch. 184; Kuypers v. Reformed Dutch Church, 6 Paige, 570; Story, Eq. Pl. § 443. The formal protestation accompanying the demurrer is of no avail to protect it against this defect, as it cannot serve the purpose of a plea or answer, or form an excuse for not putting in the one or the other. Story, Eq. Pl. §§ 452, 457, 458. We think, therefore, that the general demurrer must be overruled on both points. As faults in pleading have occurred on both sides, each party may amend without paying costs to the other.