## Case No. 6,324.

### HEINE v. APPLETON et al.

[4 Blatchf. 125.] [1]

Circuit Court, S. D. New York. Dec. 24, 1857.

COPYRIGHT—EXCLUSIVE RIGHT TO SKETCHES MADE WHILE IN EMPLOY OF GOVERNMENT.

1. The plaintiff, an artist, accompanied the expedition to Japan, fitted out by the United States government; as a master's mate, and signed the shipping articles, and received pay in that capacity, with the distinct understanding that all sketches and drawings he might make were to be the exclusive property of the government. He made sketches and drawings which were, on his return, incorporated, with his assent, in a report of the expedition, made to the navy department, and congress ordered a large

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

number of copies of the report, containing prints and engravings made from such sketches and drawings, to be published for distribution. Afterwards, the plaintiff undertook to obtain a copyright for some of the prints and engravings so incorporated in the report to the navy department. *Held*, that he was not author or proprietor of the prints and engravings, in such a sense as to be capable of acquiring an exclusive right to the same, at the time he undertook to do so, and that they had been given to the public.

2. But, in this case, even if the plaintiff were the proprietor of the copyright of the prints and engravings in question, he had been employed and paid by the defendants to prepare some of the prints for publication by them, and he could not now be allowed to ask that the sale of the prints he had so prepared should be stopped by injunction.

In equity.

This was an application for a provisional injunction. The plaintiff [William Heine], by profession an artist, accompanied the late expedition to Japan and the China seas, which was fitted out by the government of the United States, and was under the command of Commodore Perry, of the United States navy. He was shipped as a master's mate, and served as such, on board of one of the public ships which accompanied the expedition. During the expedition, he made several original sketches, and drawings of many of the prints and illustrations, which were incorporated in the report made by Commodore Perry to the secretary of the navy, and published in large numbers, by order of congress, under the title of "A Narrative of the Expedition of an American Squadron to the China Seas and Japan, Performed in the Years 1852, 1853 and 1854, under the Command of M. C. Perry, United States Navy; Compiled from the Original Notes and Journals of Commodore M. C. Perry and His Officers, at His Request, and under His Supervision, by Francis L. Hawks, D.D., LL.D., &c." For certain of the prints and illustrations so incorporated in the report of Commodore Perry to the secretary of the navy, and published by order of congress, the plaintiff, in June, 1856, obtained from the clerk of the district court of the United States for the Southern district of New York, a certificate of copyright, as author and proprietor. This was after the report had been made to the secretary of the navy, and after it had been ordered to be published by congress. The defendants [William H. Appleton and others], in July, 1856, published two several editions of the report so made to the secretary of the navy, in both of which were contained the prints and illustrations in question. One of the editions so published by the defendants was precisely like, both in form and in matter, (with the exception of the title page,) the work published by order of congress. The defendants, about the same time, published another work, which contained the prints and illustrations in question. The plaintiff now brought his bill, in which, among other things, he prayed that the defendants might be enjoined against selling or otherwise disposing of any of the works so published by them, in which were contained any of the prints or illustrations so claimed by the plaintiff as author and proprietor.

Dexter A. Hawkins, for plaintiff.
William Emerson, for defendants.

INGERSOLL, District Judge. The view I take of this case renders it unnecessary to consider it in some of the aspects in which it has been presented. It can be satisfactorily disposed of by considering two questions only: First. Was the plaintiff, at the time he obtained a certificate of copyright, entitled to the exclusive right to the prints and illustrations in question, as author and proprietor? Second. Admitting that he was, are there any facts in the case, which should restrain the court from granting the injunction prayed for?

That the plaintiff made the original sketches and drawings of the prints and illustrations in question, admits of no doubt. But, notwithstanding this, he was not an author or proprietor of the prints and illustrations, in such a sense as to be capable of acquiring an exclusive right to the same, at the time the certificate of copyright was granted. This appears very clear by the affidavits introduced on the part of the defendants. Previous to the sailing of the expedition to Japan, the plaintiff applied to Commodore Perry, to be employed as an artist, and to accompany the expedition, as such. He was informed by the commodore, that congress had made no provision for an artistic or scientific department, and that he could not be employed. He renewed his application, and finally the commodore consented to receive him in the capacity of a master's mate, on condition that he should sign the shipping articles as such master's mate, and do whatever duties might be required of him, and be subject to all the rules and regulations of the squadron. When the commodore consented that the plaintiff might join the expedition, he informed him that all the sketches and drawings which should be made by any one attached to the expedition were to be the exclusive property of the government of the United States, and that no one could appropriate to his own use any sketch or drawing that might be made. To this the plaintiff gave his assent, and he joined the expedition as master's mate, and received pay as such, with the distinct understanding that the sketches and drawings which he might make were to be the exclusive property of the government of the United States. Although the plaintiff was shipped as master's mate, his chief duty was to make sketches and drawings for the government. Upon the return of the expedition to this country, the sketches and drawings which the plaintiff made, were, with his assent, incorporated in the report made by the commodore to the secretary of the navy, and were placed at the disposal of congress; and congress, long before the cer-

tificate of copyright was obtained by the plaintiff, ordered a large number of copies of the report, containing the prints and engravings made from the original sketches and drawings, to be published for distribution. Under these circumstances, the plaintiff was not such author of the prints and engravings in question, as to be able to acquire an exclusive right to the same as author or proprietor, by virtue of the certificate of copyright which he obtained. The sketches and drawings were made for the government, to be at their disposal; and congress, by ordering the report, which contained those sketches and drawings, to be published for the benefit of the public at large, has thereby given them to the public.

But, even if the plaintiff had an exclusive right to the prints and engravings in question, by virtue of the certificate of copyright which he obtained, there are certain facts which have appeared in evidence, which would restrain the court from granting the preliminary injunction now asked for. The certificate of copyright was obtained by the plaintiff early in the summer of the year 1856. The several works of the defendants, now sought to be enjoined, were published by them in the summer of the year 1856, and soon after the plaintiff obtained his certificate of copyright. One of these works is a quarto edition of the Expedition to Japan, the same as published by order of congress. Another is an octavo edition of the same work. As early as January, 1856, the plaintiff met, by appointment, the Rev. Dr. Hawks, who wrote the narrative of the Expedition to Japan, for the purpose of selecting sketches to appear in the octavo edition of the work, then about to be published by the defendants. No mention was made by the plaintiff of any claim to copyright on his part; and it was understood by Dr. Hawks, that any of the drawings which should be selected were to be used for the octavo edition of the defendants' work. At a subsequent period, the plaintiff was employed by the defendants, to reduce several drawings from the size of the quarto edition to that of the octavo edition, for which service he was to be paid by the defendants, and there is no complaint that he never was paid. The plaintiff thus aided in the publication of some of the works of the defendants. When he thus aided in their publication, he made no claim of copyright. It would be inequitable now to permit him, when he has been paid to aid in their publication and sale, and has thus aided in their publication, with a view to their sale, to stop their sale, even if he had a valid copyright in them. By aiding in their publication, he agreed to their publication, and, by agreeing that they might be published, he agreed that they might be sold; and he cannot now, with success, ask that the defendants may be restrained from doing that which he has agreed they may do. The motion for a preliminary injunction must, therefore, be denied.