## Case No. 10,671.

PAIGE et al. v. BANKS et al.

[7 Blatchf. 152.] [1]

Circuit Court, S. D. New York. Feb. 4, 1870.[2]

COPYRIGHT—ASSIGNMENT—INFRINGEMENT BY ASSIGNOR.

Where P. agreed to furnish to G., in manuscript, for five years, the reports of a court for publication, and that G. should have the copyright of such reports forever, and G. agreed to publish such reports and to pay P. $1,000 per volume for each volume he, G., should publish, and P. furnished to G. the manuscript for a volume of such reports, which G. published, and for which G. took out a copyright, as proprietor, in 1830, under the act of May 31st, 1790 (1 Stat. 124), and, in 1858, P. and G. each of them renewed the copyright of such volume, for his own benefit, for fourteen years, under the Act of February 3d, 1831 (4 Stat. 439), and then P. sued G. for an infringement of such copyright as renewed by P.: *Held*, that, under the agreement, G. had the perpetual right, as against P., to print, publish and sell copies of such volume, without giving to P. any further compensation, in respect thereof, beyond the $1,000.

[Cited in Yuengling v. Schile, 12 Fed. 106.]

In equity.

This was a final hearing, on pleadings and proofs, of a bill in equity brought [by Edward W. Paige and Samuel W. Jackson, executors, etc., of Alonzo C. Paige, against David Banks, Jr., and others] for the alleged infringement of copyrights. Although the scope of the bill was wider, the case at the hearing was limited to the question of infringement by the sale of what is known as the first volume of Paige's Chancery Reports.

Duncan Campbell, for plaintiffs.
Elbert E. Anderson, for defendants.

BLATCHFORD, District Judge. On the 7th of October, 1828, Alonzo C. Paige, the testator of the plaintiffs, entered into a written agreement with William Gould and David Banks, of whose rights under said agreement the defendants are the assignees, which agreement was as follows: "Articles of agreement made this 7th day of October, in the year 1828, between Alonzo C. Paige, of the city of Schenectady, of the one part, and William Gould and David Banks, of the other part, witnesseth, that the said Alonzo C.

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]
[2] [Affirmed in 13 Wall. (80 U. S.) 608.]

Paige (the said William Gould and David Banks performing the agreements to be done and performed as hereinafter contained), during the term of five years from the twenty-eighth day of April last, if the said Alonzo shall so long remain reporter of the court of chancery, shall and will furnish the said Gould and Banks, in manuscript, the reports of the said court for publication, and that the said Gould and Banks shall have the copyright of said reports to them and their heirs and assigns forever; and the said William Gould and David Banks covenant and agree to and with the said Alonzo, that they will publish said reports in royal octavo volumes of between six and seven hundred pages, on paper and type suitable for such a work, that they will deliver to the said Alonzo twelve copies free of expense, that they will sell said reports to the members of the bar of New York at a sum not exceeding six dollars per volume, bound in calf, for each volume they shall so sell, within one year next subsequent to the publication of such volume; and the said Gould and Banks agree to pay to the said Alonzo one thousand dollars per volume for every volume they shall publish, and at the same rate for less than a volume, within six months after the publication of each volume. It is understood that the said Alonzo C. Paige is to read and correct the proof-sheets of said reports as the same are furnished him. In witness whereof the said parties have hereunto set their hands and seals the day and year first above written. A. C. Paige. (L. S.) D. Banks. (L. S.) William Gould. (L. S.)"

Under this agreement, Mr. Paige furnished to Gould and Banks the manuscript for a volume of reports which was subsequently published by them and is now known as volume 1 of Paige's Chancery Reports. Gould and Banks took out a copyright of that volume, as proprietors thereof, under and by virtue of the laws of the United States, by depositing the title of the same in the proper clerk's office on the 5th of January, 1830. This copyright was taken out under the act of May 31st, 1790 (1 Stat. 124), and was limited in duration, by that act, to fourteen years, with a right of renewal, by taking certain prescribed steps, for fourteen years more. By the 16th section of the act of February 3d, 1831 (4 Stat. 439), provision was made for the continuance ipso facto of then existing copyrights, in certain cases, for such additional period of time as would, together with the time which should have elapsed from the first entry of such copyright, make up the term of twenty-eight years. Waiving the question as to whether Mr. Paige or Gould and Banks were the lawful proprietors of the copyright of the first volume of the Reports, during the term from January 5th, 1844, to January 5th, 1858, the proprietorship of the copyright in such first volume during a term from January 5th, 1858, to January 5th, 1872,

is claimed for Mr. Paige, as well as for Gould and Banks. It is claimed that Mr. Paige, by proper steps taken, renewed the copyright of such first volume under the act of 1831, for his own benefit, for the term of fourteen years from the 5th of January, 1858, and that the assignors to the defendants, by like proper steps, renewed such copyright under said act, for their own benefit, for the same term. The defendants have, since the 5th of January, 1858, sold copies of such first volume published by them, and made profits thereon.

The right of the defendants as against the plaintiffs depends upon the construction to be given to the agreement before recited. If Mr. Paige, by that agreement, debarred himself from obtaining, as against the defendants, a copyright for such first volume, the plaintiffs cannot recover in this suit. By that agreement, Mr. Paige agreed to furnish to Gould and Banks, in manuscript, during the term of five years from April 28th, 1830, the reports of the court of chancery for publication, and that Gould and Banks should have the copyright of said reports to them and their heirs and assigns forever. Gould and Banks agreed to publish said reports in a specified style, to furnish Mr. Paige with a specified number of copies free of expense, to limit the selling price of each volume under certain circumstances, and to pay to Mr. Paige one thousand dollars per volume for every volume they should publish, and at the same rate for less than a volume, within six months after the publication of each volume. It is to be noted, in respect to this agreement, that Gould and Banks are not limited by it to the publication of any specified number of copies of each volume. Mr. Paige is to furnish the reports, in manuscript, for publication. The publication is to be made by Gould and Banks. The number of copies to be published of each volume is unrestricted. Mr. Paige is to be paid one thousand dollars for each volume published. The publication spoken of everywhere in the agreement is the publication of a volume. When such volume is once published, Mr. Paige is to have, within six months after the publication thereof, that is, within six months after the first printed copy is made public, the one thousand dollars. No matter how many copies of the volume shall be, after that, printed or sold by Gould and Banks, Mr. Paige is never to have any more from them, as compensation, in respect of such volume, then the one thousand dollars. These provisions clearly give to Gould and Banks, as against Mr. Paige, the perpetual right to print, publish and sell copies of such first volume, without giving to Mr. Paige any further compensation, in respect thereof, beyond the one thousand dollars, unless some other clause in the agreement restricts such right on the part of Gould and Banks. It is claimed that such right is restricted by the provision that Gould and Banks shall have the copyright of the

reports to them and their heirs and assigns forever. It is contended that, under that provision, the whole agreement is to the effect, that Gould and Banks are to have, as against Mr. Paige, the exclusive right to publish and sell the volumes of reports no longer, at most, than during the term known to the law, under the act of 1790, at the date of the agreement, as the term for which a copyright could be obtained, that is, 28 years, or not beyond the 5th of January, 1858. But the provision in respect to copyright was inserted in the agreement for the sole purpose, manifestly, of making it clear that Gould and Banks were to be understood to be such assignees of Mr. Paige, as the author of the books, as could, under the act of 1790, secure to themselves a copyright. There is no provision in the agreement for the taking out of a copyright by Mr. Paige, and for the transfer thereof to Gould and Banks. The provision in the agreement in respect to copyright cannot be held to cause the agreement to confer any less rights on Gould and Banks, if such provision be availed of by them, than if they do not avail themselves of it. If they had not chosen to take out any copyright, as proprietors, of any volume of the reports, they would have had, as against Mr. Paige, the perpetual right to print, publish and sell the reports. If they had not chosen to avail themselves of the provision of the agreement in regard to copyright, in respect to the first volume, the construction of the agreement would have been in no manner dependent upon the existence or contents of such provision. Nor can it be dependent thereon when, as against others than Mr. Paige, Gould and Banks have availed themselves of the privilege of copyrighting such volume. So, also, Gould and Banks, not being restricted as to the number of copies of each volume which they might publish, might have printed at once, at the outset, copies enough of the first volume to supply the probable demand during the duration of any possible copyright therefor. If they had done so, they would, under the agreement, have had as much right to continue to sell those copies, after the 5th of January, 1858, as they would have had to sell any copies of such first volume during the term of any copyright thereon; and they have an equal right, as against Mr. Paige, to print copies of such first volume after the 5th of January, 1858, and to sell such copies. Taking the whole agreement together, it is manifest, that it reserves to Mr. Paige no right to prevent Gould and Banks, or their assigns, from printing, publishing and selling, at all times after its date, as many copies of any volume of the reports as they choose, without paying to him more than one thousand dollars for such volume, and that it conveys to them the right, as against Mr. Paige, to print, publish and sell, at all times after its date, as many copies of any volume of the reports as they choose.

There must be a decree dismissing the bill, with costs.

[On appeal to the supreme court. the decree of this court was affirmed. 13 Wall. (80 U. S.) 608.]